Tallulah MORGAN, et al., Plaintiffs, Appellees,

v.

Jean Sullivan McKEIGUE, et al., Defendants, Appellees.

Boston School Committee and Superintendent of the Boston Public Schools, Defendants, Appellants.

No. 82–1824.

United States Court of Appeals, First Circuit.

Argued Jan. 3, 1984.

Decided Feb. 2, 1984.

Henry C. Dinger, Boston, Mass., with whom Marshall Simonds, P.C., and Good-

win, Procter & Hoar, Boston, Mass., were on brief, for defendants, appellants.

Caroline B. Playter, Boston, Mass., with whom Kehoe, Doyle, Playter, Novick & Strimaitis, Boston, Mass., and Kenneth Kimerling, New York City, were on brief, for plaintiff, appellee El Comite De Padres.

Thomas I. Atkins, Roxbury, Mass., and John Leubsdorf, Boston, Mass., on brief for Tallulah Morgan, et al.

Daniel Burnstein, Boston, Mass., and Evalena Higginbottom on brief for Citywide Parents Council, amicus curiae.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PETTINE,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from an order entered on August 25, 1982 by Judge Garrity in the ongoing Boston school desegregation case. The Boston School Committee and the Superintendent of the Boston Public Schools challenge the portion of the order regarding the budget for the court-created Citywide Parents Council (CPC), which the School Committee is required to fund:

> 7. *Budget.* The annual budget of the parent councils for the 1982–83 school year and for subsequent years shall be approximately $500,000 unless the School Department's budget for General School Purposes should increase or decrease substantially from its current level, in which event annual changes in the School Department's budget shall be reflected, roughly proportionately, in the parent councils' annual budget. Most of the funds budgeted for parent councils shall be spent to support SPC activities. Before submitting a proposed annual budget for the parent councils to the School Department, the CPC shall consult with SPC representatives.

While the School Committee agreed to a 1982–83 CPC budget of $501,200, it attacks the automatic and indefinite budget renewal provided for in the order.

*Of the District of Rhode Island, sitting by desig-

The instant appeal presents no challenge to the continuing jurisdiction of the district court. *See Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). We shall therefore assume that the district court has continuing authority to enter remedial orders in this case. The only question is whether this order is within its remedial powers.

In *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), a unanimous Supreme Court addressed the scope of remedial power in desegregation cases,

> Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.
>
> School authorities are traditionally charged with broad power to formulate and implement educational policy and might well conclude, for example, that in order to prepare students to live in a pluralistic society each school should have a prescribed ratio of Negro to white students reflecting the proportion for the district as a whole. To do this as an educational policy is within the broad discretionary powers of school authorities; absent a finding of constitutional violation, however, that would not be within the authority of a federal court. As with any equity case, the nature of the violation determines the scope of the remedy.

We have stated that "better quality education as a general goal is beyond the proper concern of a desegregation court . . . ." *Morgan v. Kerrigan,* 530 F.2d 401, 429 (1st Cir.1976). While we recognize that the district court "has broad power to fashion a remedy," *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. at 16, 91 S.Ct. at 1276, if the remedy goes beyond eliminating unconstitutional desegregation, it is improper.

We come now to the CPC budget under review. In 1976, we approved the creation of various parent councils, prede-

nation.

cessors of the CPC, because of their remedial value,

> Apart from the invaluable function of clustering groups of different generations and races in an attempt to promote citizen understanding and support, the monitoring process is a basic responsibility of the Court. To the extent that the myriad of minor problems which will arise can be resolved without the necessity of resorting to the district judge, the process of implementation will be facilitated.

*Morgan v. Kerrigan*, 530 F.2d at 429. In the intervening years the parent councils continued to provide those remedial functions, but in the fall of 1981 the councils undertook a major self-evaluation. The resultant report to the district court presented recommendations on both the structure and function of the councils. The proposed new functions of the CPC indicate a shift in agenda toward general parental involvement in educational policy and the quality of the Boston Public Schools. Indeed, a recent agreement between the School Committee and the CPC states that one of the CPC's objectives is "improving the quality of education provided to all children in the Boston Public Schools." The agreement establishes participation in such areas as evaluation of the superintendent and principals, and collective bargaining.

The district court adopted most of the structural recommendations in the self-evaluation report and set the CPC budget, but, at the request of the School Committee, did not rule on the proposed new functions, stating "We leave it to the parents in the councils to decide whether or not they will assume responsibility for such activities." We are concerned, however, that the undifferentiated budget order may have the effect of requiring the School Committee to fund the CPC's new agenda. While active parental involvement in the educational policy of the Boston Public Schools may be a laudable goal, the district court does not, as a general proposition, possess remedial power to effectuate that goal. *See Pasadena City Board of Education v. Spangler*, 427 U.S. at 433–34, 96 S.Ct. at 2703–04; *Swann v. Charlotte-Mecklenburg Board of Educa-*

*tion*, 401 U.S. at 22–23, 91 S.Ct. at 1279–1280.

Because the district court made no findings from which we can judge the effect of this mandated expenditure upon proper desegregation goals, we cannot provide meaningful review. It is not self-evident from the facts immediately before us that an order of this character is a lawful exercise of the court's desegregation powers. Both the School Committee and this court are entitled to a clear statement of the district court's reasoning and the factual basis for the order.

We therefore vacate and remand with directions that the district court hold further proceedings after which, if it is satisfied that the same order is appropriate, it may reenter it subject, of course, to the parties' right to appellate review; otherwise the court may enter any other order it deems correct.

If the same order is reentered, the court should make findings indicating specifically why and in what respect the order is necessary and appropriate to achieve valid desegregation goals as yet unfulfilled. Such findings will almost inevitably require some assessment of how close or far away such goals are to realization in a case which has continued for over a decade. The court should also consider whether it is appropriate to give the CPC an indefinitely renewable budget without specifying the purposes for which funds may be expended or providing for periodic review. We doubt that any and all activities which such a group might undertake are equally linked to eliminating the unconstitutional segregation that is the fount of the court's remedial power.

*The order of August 25, 1982 is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.*